# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **DONNY NEW** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 08 CV 2971** |
| | ) |
| **JAMES MARINE, INC.** | ) **Judge Shadur** |
| | ) **Magistrate Judge Schenkier** |
| **Defendant.** | ) |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE WESTERN DISTRICT OF KENTUCKY

COMES NOW defendant James Marine, Inc. and submits the following memorandum of law in support of its Motion to Dismiss pursuant to Rules 12(b)(2) and (3) for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this action under 28 U.S.C. Section 1404(a) to the U.S. District Court for the Western District of Kentucky, where James Marine resides and where the events giving rise to plaintiff's claims allegedly occurred.

### I. Factual Background

Plaintiff instituted this action against James Marine under 42 U.S.C. § 1981 in connection with allegedly discriminatory employment practices that occurred in connection with his employment in Paduch, Kentucky. Because this Court lacks personal jurisdiction over James Marine and venue is improper, James Marine moves for dismissal of this action or, in the alternative, transfer to the U.S. District Court for the Western District of Kentucky at Paducah.

Defendant is a Kentucky Corporation and has its offices in Paducah, Kentucky. See Affidavit of Jeff James, attached as Exhibit A to Defendant's Motion. While plaintiff resided in

Paducah, Kentucky, he sought employment with James Marine.  *Id.*  Plaintiff's hiring and work for James Marine occurred exclusively within Kentucky.  *Id.* If plaintiff was unlawfully discriminated against (which James Marine denies), his claim unquestionably arose within Kentucky.  Plaintiff's Complaint does not identify any other connection that this case, or James Marine, has to the State of Illinois.

James Marine does not maintain an office in this District or within the State of Illinois, nor has it ever had offices in this District or the State of Illinois.  *Id.*  James Marine does not have an agent upon whom service could be made in Illinois.  *Id.*  James Marine has never maintained any bank accounts in Illinois.  *Id.*  James Marine does not maintain an Illinois telephone number or mailing address.  *Id.*  James Marine does not do business in Illinois.  *Id.*

This case should be dismissed for lack of personal jurisdiction and improper venue or, in the alternative, transferred to the U.S. District Court for the Western District of Kentucky, where defendant resides and the alleged events giving rise to the action occurred.

## II.  The Court lacks personal jurisdiction over James Marine

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that Complaints should be dismissed when the Court lacks personal jurisdiction over the defendant.  "When a defendant files a motion to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of personal jurisdiction over the defendant."  *AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc.*, 2004 WL 769399 (N.D. Ill)( attached as Exhibit 1 hereto)(citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272 (7th Cir. 1997)).

The Court cannot exercise jurisdiction over the defendant if it is improper under either the Illinois Constitution or the United States Constitution.  However, because there are no

meaningful differences between the limits imposed by the Illinois Constitution and the due

process clause of the Fourteenth Amendment to the U.S. Constitution, the Court is permitted to

address a single due process inquiry. *AIT Worldwide Logistics*, 2004 WL 769399 at *1 (citing

*Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) and *Janmark, Inc. v. Reidy*, 132

F.3d 1200, 1202 (7th Cir. 1997)).  To determine whether personal jurisdiction is satisfied in cases

involving federal questions, such as this one, the Seventh Circuit applies the "minimum

contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  *Trost v. Bauer*,

2001 WL 845477 at *3 (N.D. Ill)(attached as Exhibit 2).

Plaintiff may seek to establish the Court's personal jurisdiction over defendant through

either general jurisdiction or specific jurisdiction.  *AIT Worldwide Logistics*, 2004 WL 769399 at

*1-2.  Defendants are subject to general jurisdiction in Illinois courts when they are either (a)

domiciled in Illinois, or (b) have "continuous and systematic general business contacts with the

forum." *Id.*  Specific jurisdiction requires that the defendant "purposefully established minimum

contacts within the forum state and [that] those contacts would make personal jurisdiction

reasonable and fair under the circumstances," and that the case arises out of those contacts

between the defendant and Illinois.  *Trost*, 2001 WL 845477 at *3.

This case should be dismissed because plaintiff is unable to establish either general or

specific jurisdiction over defendant.

### A.  Plaintiff cannot establish general jurisdiction

In this Circuit, general jurisdiction requires that an out-of-state defendant, such as James

Marine, have "continuous and systematic" general business contacts with the forum state.  *RAR,*

*Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997).  In addition, the defendant's

contacts with the forum state must be "intentional, substantial, and continuous."  *Trost*, 2001 WL

845477 at *4 (citing *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989)).

There are no allegations in plaintiff's Complaint that support an argument for general jurisdiction. To the contrary, plaintiff's complaint alleges no connection whatsoever between James Marine and this jurisdiction. As set forth in the Affidavit of Jeff James, James Marine lacks the "substantial and continuous" business contacts with Illinois necessary to support a finding of general jurisdiction.

## 2. Specific jurisdiction is also lacking in this case

In the absence of general jurisdiction, plaintiff must establish specific jurisdiction over defendant. This inquiry requires the Court to decide whether defendant has purposefully established minimum contacts within Illinois, whether those contacts would make personal jurisdiction reasonable and fair under the circumstances, and whether plaintiff's claim arises from those contacts between defendant and Illinois. *Trost*, 2001 WL 845477 at *3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). Judge Lefkow of this Court recently summarized this inquiry as follows:

> "Crucial to this inquiry is a showing that the defendant 'should reasonably anticipate being haled into the court [in the forum state] because it has purposefully availed itself of the privilege of conducting activities there.' In other words, it must be foreseeable to the defendant that their contact with the forum state makes it reasonable to subject them to personal jurisdiction."

*Stericycle, Inc. v. Sanford*, 2002 WL 31856720 at *5 (N.D. Ill)(citations omitted)(attached as exhibit 3)(dismissing case for lack of personal jurisdiction where defendant's only connection to Illinois was that it had initiated contract negotiations with an Illinois corporation).

4

Plaintiff's Complaint makes no allegations that James Marine should reasonably anticipate being haled into court in Illinois because it has purposefully availed itself of the privilege of conducting activities there. To the contrary, plaintiff has not alleged anything James Marine did that would make it reasonable, or even foreseeable, that it should have to defend itself from plaintiff's claims in this Court. Plaintiff's claims relate exclusively to events that allegedly occurred only within Kentucky.

**III.    This action should be dismissed because venue is improper**

Plaintiff's claim is allegedly based upon a federal statute, 42 U.S.C. Section 1981. Accordingly, 28 U.S.C. Section 1391(b)[1] governs venue in this matter, which provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred , or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is not district in which the action may otherwise be brought.

As set forth in the Affidavit of Jeff James, James Marine (the only defendant in this action) does not reside in Illinois or within this judicial district. Rather, it resides in Kentucky and within the U.S. District Court for the Western District of Kentucky. Accordingly, plaintiff cannot satisfy venue under sub-part (1) of Section 1391. With respect to sub-part (2), all of the events giving rise to this action occurred within the U.S. District Court for the Western District of Kentucky and, therefore, venue remains unsatisfied under that sub-part. Sub-part (3) is

---

[1] Despite suing under 42 U.S.C. Section 1981, plaintiff's Complaint alleges diversity jurisdiction. Even if plaintiff's action is considered to be founded only on diversity of citizenship, such that Section 1391(a) rather than 1391(b) is applicable, the same criteria apply to determine proper venue.

irrelevant because this action could have been brought within the Western District of Kentucky. Therefore, plaintiff cannot establish venue in this District, and this action should accordingly be dismissed.

### IV. In the Alternative, this Action Should be Transferred to the U.S. District Court for the Western District of Kentucky

Even if this Court concludes that the requirements for personal jurisdiction and venue are somehow satisfied in this Court, this case should be transferred to the Western District of Kentucky pursuant to 28 U.S.C. § 1404(a). That section provides, in pertinent part, that "for the convenience of parties and witnesses, in the interest of justice…a district court may transfer any civil action to any other district or division where it might have been brought."

When ruling on a motion to transfer, the Court should consider both private and public interests. The private interest factors include: (1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Federated Dept. Stores, Inc. v. U.S. Bank Nat'l Assoc.,* 2001 WL 503039 at * 2 (N.D. Ill.)(attached as Exhibit 4). The relevant public interest factors are the Court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale. *Id.* Most importantly, a consideration of the various factors "involves a large degree of subtlety and latitude, and therefore is committed to the sound discretion of the trial judge." *Id.* (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)).

In the present case, the private interest factors weigh heavily in favor of transfer. The key allegations of plaintiff's Complaint concern James Marine's alleged conduct in discriminating against plaintiff during his employment in Paducah, Kentucky. Plaintiff was a resident of

Paducah, Kentucky and sought employment at James Marine, whose offices are located exclusively in Kentucky. Plaintiff's work for James Marine occurred solely in Kentucky and, therefore, that is the situs of the material events. Moreover, James Marine's business records concerning its employment of plaintiff (and all of its other records) are located in Paducah, Kentucky. Finally, the witnesses referred to in plaintiff's Complaint and any other individuals with knowledge about plaintiff's employment all work and/or reside in Paducah, Kentucky. See Affidavit of Jeff James. None of them work or reside in Illinois. Accordingly, all of the potential witnesses are outside the subpoena power of the Court. Aaccess to evidence and the availability and convenience to witnesses will be greatly aided if this action were transferred to the Western District of Kentucky. This case is wholly lacking any connection to the Northern District of Illinois.

The only private interest factor that weights against transfer is that the plaintiff selected this forum. However, that factor is not absolute and must yield when the other factors point to transfer. *Bloomstein v. Lucasfilsm, Ltd.*, 2002 WL 977439 at * 1 (N.D. Ill.)(attached as exhibit 5) (transferring case to Northern District of California despite plaintiff's residency in the Northern District of Illinois).

The public interest factors similarly weigh in favor of transfer. This case ultimately concerns whether a Kentucky corporation, with its offices located exclusively in or near Paducah Kentucky, discriminated against plaintiff based on his race during his employment, which occurred exclusively in Paducah, Kentucky. The State with the greatest interest in resolving this dispute is Kentucky. There is no connection between anything about this case and this judicial district. It is a local controversy in which Paducah, Kentucky is the center of gravity.

**Conclusion**

For all of the foregoing reasons, defendant James Marine, Inc. respectfully moves the

Court to dismiss this action for lack of personal jurisdiction and/or improper venue, or in the

alternative, transfer it to the Western District of Kentucky.

GOLDSTEIN and PRICE, L.C.


By:__*/s/ Neal W. Settergren*_____
　　　　　Robert Nienhuis # 2053462
　　　　　Neal W. Settergren # 6276806
　　　　　One Memorial Drive, Suite 1000
　　　　　St. Louis, Missouri 63102-2449
　　　　　Telephone (314) 421-0710
　　　　　Facsimile (314) 421-2832
　　　　　**Counsel for defendant**
　　　　　**James Marine, Inc.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 19, 2008, I electronically filed the attached document with
the Clerk of the Court using the CM/ECF system which will send notification of such filing to
the following:

　　　Lisa Kane
　　　Darren Bodner
　　　Janice Wegner
　　　Michael Young
　　　Tyler Manic
　　　Lisa Kane & Associates, P.C.
　　　120 South LaSalle Street, Suite 1420
　　　Chicago, IL  60603
　　　(312) 606-0383

And I hereby certify that on June 19, 2008, I mailed by United Stated Postal Service, the
document to the following non-registered participants:

　　　None.

　　　　　　　　　　　　*/s/ Neal W. Settergren*

8

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 769399 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 769399 (N.D.Ill.))**

Page 1

**C**
AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
    United States District Court,N.D. Illinois, Eastern
                        Division.
    AIT WORLDWIDE LOGISTICS, INC., Plaintiff,
                            v.
            RAMP LOGIC, INC., Defendant.
                    **No. 03 C 7661.**

                    April 9, 2004.

Anna Coleen Pittman, Anthony J. Madonia & Asso-
ciates, Ltd., Chicago, IL, for Plaintiff.
Shyam N.S. Dixit, Jr., Richard A. Duffin, Duffin &
Dixit, LLP, Chicago, IL, for Defendant.

            *MEMORANDUM, OPINION AND ORDER*

ANDERSEN, J.
**\*1** This matter is before the Court on defendant
Ramp Logic, Inc.'s motion to dismiss for lack of
personal jurisdiction pursuant to Federal Rule of
Civil Procedure 12(b)(2) and for improper venue
pursuant to Rule 12(b)(3) or, in the alternative, for
a change of venue. For the following reasons, the
motion to dismiss for lack of personal jurisdiction
is granted. The motion for improper venue or, in the
alternative, for a change of venue is denied as moot.

                    BACKGROUND

Plaintiff AIT Worldwide Logistics, Inc. ("AIT") is
an Illinois corporation with its principle place of
business in Itasca, Illinois. AIT is in the business of
providing freight and shipping services. Ramp Lo-
gic is a California corporation with its principal
place of business in Southern California. Ramp Lo-
gic is in the business of manufacturing ramps and
skateboard equipment.

AIT has filed a two count amended complaint

against Ramp Logic alleging breach of contract and
unjust enrichment. AIT alleges that it entered into a
contract with Ramp Logic to provide shipping ser-
vices, and pursuant to that contract, AIT states that
it provided shipping services to Ramp Logic for
which Ramp Logic has failed to pay. Ramp Logic
now seeks to dismiss AIT's amended complaint for
lack of personal jurisdiction.

                    DISCUSSION

When a defendant files a motion to dismiss a case
for lack of personal jurisdiction, the plaintiff bears
the burden of demonstrating the existence of per-
sonal jurisdiction over the defendant. *RAR, Inc. v.
Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th
Cir.1997). In assessing such a motion, the allega-
tions in the complaint are to be taken as true unless
controverted by a defendant's affidavit, and any
conflicts are to be resolved in favor of
plaintiff.*Turnock v. Cope,* 816 F.2d 332, 333 (7th
Cir.1987).

This Court cannot exercise jurisdiction over a de-
fendant if it is improper under either the United
States or Illinois Constitution. *Brandon Apparel
Group, Inc. v. Quitman Mfg. Co. Inc.,* 42 F.Supp.2d
821 (N.D.Ill.1999). Because "there is no operative
difference between the limits imposed by the
Illinois Constitution and the federal limitations on
personal jurisdiction,"*Hyatt Intern. Corp. v. Coco,*
302 F.3d 707, 715 (7th Cir.2002) (citation omitted),
this Court will address a single due process inquiry.
*Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th
Cir.1997). The United States Constitution's limita-
tion on the exercise of personal jurisdiction over a
non-resident defendant is through the due process
clause of the Fourteenth Amendment.*RAR,* 107
F.3d at 1277. In order for a court to exercise per-
sonal jurisdiction over a non-resident defendant,
due process requires that the defendant have
"certain minimum contacts with [the state] such
that the maintenance of the suit does not offend



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 769399 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 769399 (N.D.Ill.))**

'traditional notions of fair play and substantial justice." ' *Id.,* quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A court can acquire personal jurisdiction over a defendant through either general or specific jurisdiction.

**\*2** A defendant is subject to general jurisdiction in Illinois only when it is either domiciled in Illinois, *Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F.Supp.2d 824, 833 (N.D.Ill.2000), or when "the defendant has continuous and systematic general business contacts with the forum."*RAR, Inc.,* 107 F.3d at 1277 (citation and internal quotations omitted). AIT has not alleged that Ramp Logic has any offices or employees in Illinois or that Ramp Logic has continuous and systematic business contacts with Illinois. Thus, there is no basis for this Court to exercise general jurisdiction over Ramp Logic.

Alternatively, a defendant is subject to specific jurisdiction when it has "purposefully established minimum contacts with the forum State."*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether a defendant has sufficient minimum contacts with Illinois, courts should consider whether the defendant could "reasonably anticipate being hauled into court" in Illinois. *World-Wide Volkswagen Corp. v. Woodsen,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)."[A]n out-of-state party's contract with an in-state party is alone not enough to establish the minimum contacts."*RAR, Inc.,* 107 F.3d at 1277.

In its amended complaint, AIT alleges that Ramp Logic solicited AIT's services through a telephone call to AIT's offices in Illinois and that all negotiations, correspondence and telephone conversations in furtherance of the contractual relationship between the parties took place in their respective offices. AIT also alleges that all of the invoices related to the contract were generated in Illinois and mailed to Ramp Logic from AIT's Illinois office. However, no services were performed in Illinois. Other than these facts, no other contacts with

Illinois were alleged.

The facts alleged in AIT's amended complaint are not sufficient to carry AIT's burden to establish specific jurisdiction. In *Federated Rural Elec. Inc. Corp. v. Inland Power & Light Co.,* 18 F.3d 389 (7th Cir.1994), the Seventh Circuit rejected similar allegations as supportive of personal jurisdiction over the defendant, holding that "making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction."18 F.3d at 395-96.

Likewise in *Stericycle, Inc. v. Sanford,* 2002 WL 31856720 (N.D.Ill.Dec.20, 2002), the defendant argued that the court did not have personal jurisdiction over it due to the following factors: (1) all negotiations consisted of telephone calls and facsimile transmissions and did not take place in person in Illinois; (2) although the agreement was drafted by the plaintiff in Illinois, the defendant reviewed, revised and executed the contract in Pennsylvania; (3) all of the assets subject to the contract were located outside of Illinois; and (4) the contract required no performance in Illinois. 2002 WL 31856720, at \*6. The court agreed that it did not have any personal jurisdiction over the defendant, holding:

**\*3** Viewing the contacts in their totality, the court cannot say that the [defendants] had such contacts as to make it foreseeable that they would be subject to suit in Illinois. While [defendants] initiated the discussions concerning the ... Agreement, "[t]he constitutionality of jurisdiction does not turn on which party started it."

While the [defendants] did have frequent telephone and facsimile contact with [plaintiff] in Illinois, these communications related to the contract which was to be performed entirely outside of Illinois, a factor weighing against personal jurisdiction. Moreover, the [defendants] never traveled to Illinois in negotiating the contract, did not execute any part of the contract in Illinois and none of the Assets were located in Illinois.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 769399 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 769399 (N.D.Ill.))**

If the court were to find personal jurisdiction it would, in essence, be simply asserting personal jurisdiction because an out-of-state party negotiated a contract with an in-state party. As the Supreme Court noted in *Burger King,* however, contacts that result from such a contract are, in and of themselves, not sufficient to rise to the level of minimum contacts necessary for personal jurisdiction.

*Id.* at *6-7 (citations omitted). Similarly, in this case, AIT has failed to allege sufficient facts to support a finding of personal jurisdiction over Ramp Logic. The facts alleged by AIT to support a finding of specific jurisdiction are precisely the same factors that were considered and rejected by the courts in *Federated* and *Stericycle* as patently insufficient for purposes of personal jurisdiction. Thus, there is no basis for this Court to exercise specific jurisdiction over Ramp Logic.

### CONCLUSION

For all of the foregoing reason, Ramp Logic's motion to dismiss for lack of personal jurisdiction is granted. The motion for improper venue or, in the alternative, for a change of venue is denied as moot.

It is so ordered.

N.D.Ill.,2004.
AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc.
Not Reported in F.Supp.2d, 2004 WL 769399 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                   Page 1
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))**

**C**
Trost v. Bauer
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Todd TROST, et. al Plaintiff,
v.
Jason BAUER, & Azuradisc, Inc., Defendants.
**No. 01 C 2038.**

July 24, 2001.

MEMORANDUM AND OPINION

HIBBLER, District J.
**\*1** This Court has before it Defendants' Motion to
Dismiss or Transfer for Lack of Jurisdiction and
Improper Venue (doc. # 4). Plaintiffs brought their
Declaratory Judgment Action claiming that they
have not infringed and are not infringing on several
of Defendants' patents. Plaintiffs claim this Court
has personal jurisdiction over Defendants by their
presence in this district, the operation of a website
in this district, and sending infringement letters to
Plaintiff in this District. Plaintiffs also claim that
there is an actual case or controversy between the
parties because the aforementioned letters placed
them in reasonable apprehension of impending lit-
igation.

Defendants claim lack of personal jurisdiction over
Jason Bauer and Azuradisc, lack of subject matter
jurisdiction and improper venue pursuant to Rules
12(b)(2), (b)(1), and (b)(3), of the Federal Rules of
Civil Procedure. For the reasons set forth herein,
Defendants' Motion to Dismiss for Lack of Jurisdic-
tion (doc # 4) is GRANTED. Defendants' Motion to
Transfer for Improper Venue (doc. # 4) is dismissed
as moot.

BACKGROUND

Plaintiff Todd Trost is an Illinois resident and the
remaining three Plaintiffs, Damaged Disc Repair,
Inc. ("Damaged Disk"), Orland Video West, Inc.
("Video West") and Specialty Store Services, Inc.
("Specialty Store") are Illinois corporations, doing
business in the state (collectively known as
"Plaintiffs"). Defendant Jason Bauer ("Bauer") is
an Arizona resident and Defendant Azuradisc, Inc.
("Azuradisk") is an Arizona corporation, with its
principal place of business in Arizona (collectively
known as "Defendants").

In late 1997, Marshall Weinstein, a principal of
Plaintiff Specialty Store, telephoned Bauer regard-
ing advertising Defendants' CD scratch removal
machines in Weinstein's trade magazine. The ma-
chines are used to repair and remove scratches on
CD's, DVD's and other such discs.[FN1]Eventually
Weinstein visited Bauer's home in Arizona, inspec-
ted the machines, discussed the engineering details,
and read the business plans. Sometime thereafter,
Weinstein returned to his home in Illinois and
began to make his own disc repair machines, selling
them through Specialty Store.

> FN1. Defendants' machines are currently
> covered by three different patents.

On January 23, 2001, Defendants sent Plaintiffs
correspondence stating that they may be in viola-
tion of the patents involving the use, manufacture,
and distribution of Plaintiffs' compact disc repair
machines. Plaintiffs' retained counsel and sent a let-
ter of inquiry to Defendants' counsel on February
14, 2001, to which they allegedly received no re-
sponse. On March 22, 2001 Plaintiffs filed suit in
this Court.

LEGAL STANDARDS

A. Subject Matter Jurisdiction

DEFENDANT'S
EXHIBIT
2

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

Page 2

The Federal Rules of Civil Procedure provide for dismissal of claims when the district court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving facts sufficient to establish personal jurisdiction. *Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc.* 15 F.3d 721, 723-24 (7th Cir.1994). Subject-matter jurisdiction generally should be considered before personal jurisdiction, even though a district court may dismiss for lack of personal jurisdiction without determining whether subject-matter jurisdiction exists. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 939 n. 2 (7th Cir.2000); *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 578, 587-88 (1999).

**\*2** In cases involving the Declaratory Judgment Act, 28 U.S.C. § 201, a federal court can issue a declaratory judgment only if an "actual controversy" exists at the time the suit was filed. *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1210 (7th Cir.1980). To demonstrate an actual controversy, Plaintiffs must show (1) that they have acted, or are prepared to act in a way that could constitute infringement, and (2) Defendants' conduct creates a reasonable apprehension of suit on Plaintiffs' part. *Serco Services Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1038 (Fed.Cir.1995). It is clear that this Court possesses discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. *Wilton v. Seven Falls Co,* 515 U.S. 277, 282-83 (1995) (citing *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942)).

### B. Personal Jurisdiction

The Federal Rules of Civil Procedure provide for dismissal of claims when the district court lacks personal jurisdiction. Fed.R.Civ.P. 12(b)(2). In a case based on diversity of citizenship, a federal district court in Illinois may exercise personal jurisdic-

tion over a non-resident defendant, only if an Illinois state court would have jurisdiction. *Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 723-24 (7th Cir.1994); *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir.1992). When reviewing a motion to dismiss, this Court takes all jurisdictional allegations in the complaint as true, unless controverted by Defendants' affidavits. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). Any conflicts between the parties' affidavits must be resolved in Plaintiffs' favor. *Id.* To survive a motion to dismiss, Plaintiffs have the burden of making a prima facie case for personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997); *IDS Life Ins. Co. v. SunAmerica, Inc.,* 958 F.Supp. 1258, 1264 (N.D.Ill.1997), *vacated in part,*136 F.3d 537 (7th Cir.1998) (In order to survive a defendants' motion to dismiss, the plaintiff must demonstrate that Illinois law permits jurisdiction and that the exercise of jurisdiction will not offend due process).

Federal Circuit law is controlling as to issues that are unique to patent law. "A procedural issue that is not itself a substantive patent law issue is ... governed by Federal Circuit law if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive jurisdiction by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction."*McCook Metals L.L.C., v. Alcoa Inc.,* 192 F.R.D. 242, 251 (N.D.Ill.2000) (quoting *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 803 (Fed.Cir.2000). Additionally, "[f]or procedural issues in a patent case that are not unique to patent law, courts apply the law of the circuit in which the district court sits."*Id.* In determining whether jurisdiction exists over an out of state defendant, this Court must defer to the law of the Federal Circuit with regard to the federal constitutional due process analysis of the defendant's contact with the forum state. *Graphic Controls Corp. v. Utah Medical Products, Inc.,* 149 F.3d 1382, 1386 (Fed.Cir.1998). However, this Court must look to relevant Illinois state and federal law in interpreting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

Page 3

the meaning of Illinois' long-arm statute. *Id.*

### 1. Illinois Long-Arm Statute

**\*3** This Court must determine whether Plaintiffs have cleared the three hurdles to personal jurisdiction, state statutory law; state constitutional law; and federal constitutional law, when making its determination. Important to this Court's analysis is Illinois' long-arm statute governing the jurisdiction of courts which provides that an Illinois court 'may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."735 ILCS 5/2-209(c). The Seventh Circuit has explained that the Illinois long-arm statute is coextensive with federal due process requirements such that

if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States constitution have been met, and no other inquiry is necessary.

*Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir.1995). Therefore, because the Illinois long-arm statute authorizes personal jurisdiction to the extent of constitutional limits, the three inquiries collapse into two, one state and one federal. *RAR,* 107 F.3d at 1276. If jurisdiction is improper under the Illinois or United States' Constitutions, then this Court cannot exercise jurisdiction over Defendants. *Jamik, Inc. v. Days Inn of Mount Laurel,* 74 F.Supp.2d 818, 821 (N.D.Ill.1999).

### 2. Federal Due Process

The Federal Circuit, like the Seventh Circuit applies the " 'minimum contacts' standard of *International Shoe* [*Co. v. Washington,* 326 U.S. 310 (1945) ]and its progeny to questions of personal jurisdiction in federal question cases, such as those arising under the patent laws."*Akro Corp. v. Luker,* 45 F.3d 1541, 1545 (Fed.Cir.1995) (citing cases). Under *International Shoe,* federal due process re-

quires Defendants to have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *International Shoe,* 326 U.S. at 316. Whether a defendant has maintained minimum contacts in each particular case is dependent on whether the plaintiff asserts specific or general jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984). General jurisdiction is for suits neither arising out of nor related to the defendant's contacts, and is permitted only where the defendant has "continuous and systematic general business contacts" with the forum state. *Id.* at 416.

### a. Specific Jurisdiction

To determine whether specific jurisdiction exists, this Court must decide whether Defendants have "purposefully established minimum contacts within the forum state" and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-77 (1985). This Court's first inquiry is whether Defendants could reasonably anticipate being haled into court in this state. *Id.* at 474-75.To answer this question, this Court must determine if Defendants purposefully availed themselves of the privilege of conducting activities in Illinois. *Id.* This Court cannot exercise personal jurisdiction over Defendants "solely as a result of random, fortuitous, or attenuated contacts."*Id.* Next, this Court must consider whether exercising personal jurisdiction over Defendants is reasonable such that it comports with traditional notions of fair play and substantial justice. This Court must consider the following five factors, (1) the burden on the defendant of litigating in the forum; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

of the states in furthering fundamental substantive policies. Once minimum contacts have been established, "often the interest of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."*Id.*

### b. General Jurisdiction

**\*4** General jurisdiction arises when the nonresident defendant has "continuous and systematic general business contacts" with the forum state.*RAR,* 107 F.3d at 1277 (citing *Helicopteros Nacionales,* 466 U.S. at 416). This Court must look to Defendants' additional contacts with the forum state beyond those related to the action being brought against them to determine whether general personal jurisdiction exists. *Dehmlow v. Austin Fireworks,* 963 F .2d 941, 947 n. 6 (7th Cir.1992). However, Defendants' actions must be intentional, substantial, and continuous, rather than inadvertent, trivial, or sporadic. *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 570 (7th Cir.1989).

### ANALYSIS

### A. Lack of Subject Matter Jurisdiction

Plaintiffs assert that they have alleged sufficient facts to establish subject matter jurisdiction for their Declaratory Judgment Action because an actual controversy exists between the parties, and Defendants' actions placed them in a reasonable apprehension that they would be sued for infringement. Defendants claim that no actual controversy exists because the letters sent to Plaintiffs were mere inquiries concerning Plaintiffs' possible infringement. Based on the facts presented, this Court declines to exercise jurisdiction over the Declaratory Judgment claim even though an actual controversy exists.

This Court has jurisdiction over this cause of action

in accordance with the Declaratory Judgment Act. "A declaratory judgment action affords a measure of relief to the potential infringer who is under the shadow of threatened infringement litigation."*Serco Srvs. Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1038 (Fed.Cir.1995). Under the Act, an actual controversy between the parties must exist for this Court to exercise jurisdiction over the Declaratory Judgment claim. "[T]he presence of an 'actual controversy' within the meaning of the statute depends on whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having averse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."*EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996) (citations omitted). However, should this Court determine that an actual controversy exists, it is entirely within its discretion to decline exercising jurisdiction. *Id.* This Court should consider whether Plaintiffs actually produced an allegedly infringing product and whether Defendants' conduct actually created an objectively reasonable apprehension of suit on Plaintiffs' part. *Id.* at 811.

Plaintiffs claim that they were placed in reasonable apprehension of an infringement suit based on letters dated January 23, 2001. (Pl .'s Exs. 1 and 2.) Plaintiffs allege that Defendants threatened to sue for them patent infringement. Defendants counter that the letters were not threatening and were sent merely to inquire into Plaintiffs' actions. Based on the language of the two letters, this Court finds that an actual controversy existed. Plaintiffs quote specific language from the letters in their reply that they claim placed in them in apprehension of an infringement suit. In reading Defendants' letter to Plaintiffs, it is clear that Defendants state that in the event that Plaintiffs infringe the patents, Defendants intend to take all steps legally permitted.[FN2]The Federal Circuit has made it clear that "where all that is present is negotiation unaccompanied by threats of legal action, the setting is not sufficiently adverse to create a justiciable controversy. That principle, however, is inapplicable in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

Page 5

a case such as this one, where the patentee has made explicit references to the prospect of initiating legal action."*EMC Corp.,* 89 F.3d at 812. Accordingly, this Court is satisfied that an actual controversy exists under the Declaratory Judgment Act.

> FN2. Specifically, Defendants' letter states, "[p]lease be advised that any infringement of these patents is a matter of grave concern to us. We intend to take all steps legally permitted to enforce our clients' intellectual property. These steps may include, when necessary, resorting to litigation to ask the court's help in obtaining all monetary and injunctive relief to which our clients are entitled. In fact, one such lawsuit is in progress now, and if you do not cooperate, your firm may be next."(Pls.' Exs. 1 & 2, Letters from Defendants to Plaintiff Trost and Weinstein of January 23, 2001, at 1.)

**\*5** However, even though this Court has found an actual controversy, an exercise of jurisdiction is not required and will only be reversed upon a finding of an abuse of discretion. *Id.* In fact, "as long as [this Court] acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action."*Id.* at 813-14.In response to Defendants' January 23, 2001 letter, Plaintiffs sent a letter stating that they would evaluate Defendants' claims and respond to them at the end of their investigation.FN3Plaintiffs claim that Defendants failed to respond to their letter. Less than six weeks after responding the Defendants letter, Plaintiffs filed suit. This Court may take into account whether Plaintiffs' "first-filed action is initiated in an apparent attempt to pre-empt anticipated litigation and deprive the party of its choice of forum."*Solo Cup Co., v. Fort James Corp.,* No. 99 C 4724, 1999 WL 1140885, at *1 (N.D.Ill. Nov. 29, 1999) (quoting *KPR Inc. v. C & F Packing Co ., Inc.,* 30 U.S.P.Q.2d 1320, 1323 (N.D.Tex.1993)). In this

case, this Court finds that Plaintiffs filed this action for declaratory judgment solely for forum shopping purposes. Plaintiffs assert that they brought this anticipatory cause of action because they had a reasonable apprehension of being sued for patent infringement. While it is true that the purpose of the Act is to alleviate Plaintiffs' necessity of waiting indefinitely for an infringement action to be filed, *KPR,* 30 U.S.P.Q.2d at 1323, the circumstances of this litigation act as a mitigation to Plaintiffs' apprehension. Plaintiffs claim that Defendants' previous suits against other competitors is evidence of its intent to sue. Yet "the fact that [Defendants have] recently filed infringement suits against other [competitors] based upon the same patents and equipment at issue in this case should also have been an indication to [Plaintiffs] that [they] would not be forced to wait indefinitely for [Defendants] to file suit."*Id.* The facts in this case are clear, although Plaintiffs assured Defendants that a review of the issues would be done and the results of the review would be forwarded to Defendants, Plaintiffs instead filed suit less than six weeks after sending its February 14, 2001 letter.FN4Accordingly, based upon the facts presented, this Court finds that even though a real controversy exists, Plaintiffs raced to the courthouse to Defendants' detriment. *Solo Cup,* 1999 WL 1140885, at *2. Therefore, this Court declines to exercise subject matter jurisdiction over the Declaratory Judgment claim.

> FN3. In response the Defendants' letter Plaintiffs wrote, "[w]e are presently evaluating the issues you have raised and will respond to them as soon as we complete our evaluation."(Pls.'s Ex. 3, Letter from Plaintiffs to Defendants of February 14, 2001.)

> FN4. This Court anticipates that Plaintiffs will claim that in their February 14th letter, they requested further information from Defendants and when Defendants failed to reply they filed suit. However, nowhere in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the letter do Plaintiffs inform Defendants that failure to submit the additional information will result in an anticipatory lawsuit.

### B. Lack of Personal Jurisdiction

Defendants also argue that Plaintiffs have failed to demonstrate that personal jurisdiction exists. Defendants claim that they are not doing business in Illinois, their website does not specifically target Illinois or its residents, and the infringement letters do not establish minimum contacts such that this Court should exercise personal jurisdiction over the Defendants. Plaintiffs counter that this Court should exercise personal jurisdiction over Defendants based upon the infringement letters and solicitation of sales in Illinois. After careful review of the evidence and considering all well-plead facts in Plaintiffs' favor, this Court finds that Plaintiffs have failed to meet their burden of demonstrating sufficient minimum contacts which necessitate this Court's exercise of personal jurisdiction.

**\*6** Plaintiffs' burden is to establish that jurisdiction exists under the Illinois long-arm statute. *Inamed Development Co. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed.Cir.2001). Illinois' long-arm statute permits the exercise of jurisdiction over claims which arise out of the defendant's transaction of business, or commission of a tort in Illinois, as well as, performance of a contract substantially connected with Illinois. 735 ILCS 5/2-209(a)(1) and (2). The "transaction of business test" may be satisfied by an isolated act, as long as, Plaintiffs' claims arise out of that act. *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 591 (7th Cir.1984). Additionally, Illinois state courts have jurisdiction over a non-resident defendant "doing business" in the state. 735 ILCS 5/2-209(b). A corporation is "doing business" in Illinois if it engages in regular activities in Illinois, "not occasionally or casually, but with a fair measure of permanence and continuity."*Michael J. Neuman,* 15 F.3d at 724 (citations and quotations omitted)."The decision as to whether a corporation's in-state activities are sufficiently permanent and con-

tinuous to qualify as 'doing business' is to be made on a case-by-case basis and depends on the unique situation in particular case."*IDS,* 958 F.Supp. At 1265. The Seventh Circuit has defined the concept of "doing business" as "those nonresident businesses that are so like resident businesses, insofar as the benefits they derive from state services are concerned, that it would give them an undeserved competitive advantage if they could escape having to defend their actions in the local courts."*IDS,* 136 F.3d at 540-41.

Should Plaintiffs satisfy their burden of demonstrating minimum contacts, then Defendants bear the burden of demonstrating that this Court's exercise of jurisdiction will not offend due process. *Inamed,* 249 F.3d at 1360. Due process measures the limits of personal jurisdiction by the strength of the relationship between the defendant and the forum state. The due process inquiry encompasses two parts, minimum contacts and fair play and substantial justice. First, the defendant must have 'purposely established 'minimum contacts' in the forum State."*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Second, the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

The required minimum contacts are established in one of two ways, when defendant has sufficient "contacts of a continuous and systematic nature," with the forum, *Helicopteros Nacionales De Columbia, S.A. v. Hall,* 466 U.S. 408, 416 (1984), or the cause of action before the court relates to, or arises out of, defendant's contacts with that forum state. *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977). These minimum contacts must "result from actions by the defendant himself that create a 'substantial connection' with the forum State."*Burger King,* 471 U.S. at 475. The well-settled rule is that the defendant must have "purposefully availed" himself of the privilege of conducting activities within the forum state such that he should "reasonably anticipate be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))**

ing haled into court there."*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 91980). Defendants may not be haled into a jurisdiction "solely as a result of random, fortuitous or attenuated contacts" or stem from the "unilateral activity of another party or third person."*Burger King,* 471 U.S. at 475.

**\*7** A defendant may be subject to either specific or general jurisdiction under the "minimum contacts" test. *LSI Indus. v. Hubbell Lighting,* 232 F.3d 1369, 1375 (Fed.Cir.2000). Specific jurisdiction exists if Defendants purposefully directed their activities at Illinois residents, Plaintiffs' claims arise out of or are related to those activities, and the assertion of personal jurisdiction is reasonable and fair. *Hollyanne v. TFT, Inc.,* 199 F.3d 1304, 1307-08 (Fed.Cir.1999); *RAR,* 107 F.3d at 1277. General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. It is Defendants' conduct in relation to Illinois, not the unilateral actions of Plaintiffs, which determine jurisdiction. *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 946 (7th Cir.1992). In this case, Plaintiffs have failed to allege either specific or general jurisdiction, therefore, this Court will analyze their claims under both options.

1. Personal Jurisdiction Over Jason Bauer

Bauer claims that this Court lacks personal jurisdiction over him as he has had no contact whatsoever with the forum state. Plaintiffs counter that Illinois has personal jurisdiction over Bauer for two reasons: (1) the letter sent to Plaintiffs was sent on behalf of Bauer and Azuradisc, and (2) Bauer's sole proprietorship, CD Saver, had dealings in Illinois between 1997 and 1999, before Azuradisc was incorporated. In light of the facts before it, this Court finds that it lacks personal jurisdiction over Defendant Bauer.

In order for this Court to exercise personal jurisdic-

tion over Bauer, Plaintiffs must demonstrate that jurisdiction is proper under the Illinois long-arm statute and personal jurisdiction satisfies constitutional standards of due process and fairness. First, The Illinois Supreme Court has interpreted the Illinois long-arm statute as being more limited than due process would allow in some situations. One such limitation is the fiduciary shield doctrine. The fiduciary shield doctrine prevents personal jurisdiction over an individual whose contacts with Illinois are solely the result of acts as a representative or fiduciary of the corporation. *Plastic Film Corp. v. Unipac, Inc.,* 128 F.Supp.2d 1143, 1146 (N.D.Ill.2001). The fiduciary shield doctrine will not prevent jurisdiction over an individual where the corporation is the individual's alter ego, however, just because an individual is a member of management or holds controlling positions in a corporation does not nullify the protection of the fiduciary shield. *Kula v. J.K. Schofield & Co.,* 668 F.Supp. 1126, 1129 (N.D.Ill.1987). This is because Illinois recognizes that corporate officers, directors, and shareholders are separate and distinct from the corporation. *Id.* Second, in determining whether the defendant purposefully availed itself of a particular forum for purposes of the Fourteenth Amendment, courts in this circuit have considered whether the defendant solicited the transaction in question within the proposed forum.*Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 394 (7th Cir.1994). The handful of letters and phone calls that passed between Plaintiffs and Bauer is not enough to clear the hurdle. *Helicopteros Nacionales,* 466 U.S. at 416;*Young v. Colgate-Palmolive Co.,* 790 F.2d 567, 570 (7th Cir.1986); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596, 598, 604 (7th Cir.1979); *Madison Consulting Group v. South Carolina,* 752 F.2d 1193, 1203 n. 18 (7th Cir.1985) (dictum). This is true because even though sending an infringement letter falls within the ambit of the long-arm statute, additional contacts are necessary to satisfy due process. *E.J. McGowan, Inc. v. Biotechnologies, Inc.,* 736 F.Supp. 808, 812 (N.D.Ill.1990); *International Honeycomb Corp. v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

*Transtech Service Network, Inc.,* 742 F.Supp. 1011, 1013 (N.D.Ill.1990). Sending the infringement letter to a plaintiff in Illinois does not confer personal jurisdiction over a non-resident defendant. *Publications Intern. v. Simon & Schuster,* Inc., 763 F.Supp. 309, 313 n. 4 (N.D.Ill.1991) (citing *E.J. McGowan,* 736 F.Supp. at 812.) In fact, the Federal Circuit has recently stated that "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee."*Inamed,* 249 F.3d at 1361. Furthermore, courts in this circuit have frequently disagreed as to whether a defendant's small volume of sales in the forum state is sufficient to establish jurisdiction. A review of the cases in which a defendant's small volume of sales within the forum state subjected it to the exercise of personal jurisdiction suggests that courts exercise jurisdiction only where the defendant also engaged in the active solicitation of business or made direct advertisements targeting the forum state. *Michael J. Neuman,* 15 F.3d at 725;*Kavo America Corp. v. J.F. Jelenko & Co.,* No. 00 C 1355, 2000 WL 715602, at *4 (N.D. Ill. June 2, 2000); *Deere & Co. v. Howard Price Turf Equipment, Inc.,* No. 99 C 4169, 1999 WL 1101215, at *3 (N.D. Ill.,1999 Dec. 1, 1999); *Milligan v. Soo Line R. Co.,* 775 F.Supp. 277, 280 (N.D.Ill.1991).

*8 Because Plaintiffs have failed to meet their burden of establishing a prima facie case of personal jurisdiction over Bauer, this Court will decline from exercising personal jurisdiction over him. It is arguable that resolving all disputed facts in Plaintiffs' favor leads this Court to the conclusion that the fiduciary shield doctrine does not apply to Bauer because he is a high-ranking corporate officer of Azuradisc, *R-Five, Inc. v. Sun Tui, Ltd,* No. 94 C 4100, 1995 WL 548633, at *5 (N.D.Ill. Sept. 12, 1995); *Brujis v. Shaw,* 876 F.Supp. 975, 980 (N.D.Ill.1995), however, little doubt exists as to whether Bauer had minimum contacts with Illinois to the extent that maintaining personal jurisdiction over him would not offend traditional notions of fair play and substantial justice. *Helicopteros*

*Nacionales,* 466 U.S. at 416. Plaintiffs claim that because Bauer is the inventor and sole owner of the patents at issue, the letters sent to Plaintiffs were on his behalf, and the fact that he did business as CD Saver before he incorporated Azuradisc, leads to the conclusion that he has purposefully directed his activities at Illinois residents. This Court wholeheartedly disagrees with that assessment. Bauer's letters to Plaintiff are not sufficient to subject Bauer to this Court's personal jurisdiction. *Publications Intern.,* 763 F.Supp. at 313 n. 4. Furthermore, the fact that Bauer ran CD Saver as a sole proprietorship between 1997 to 1999 has no bearing on whether he should be subjected to personal jurisdiction for Azuradisc's transactions. Bauer "should have some control over-and certainly should not be surprised by-the jurisdictional consequences of [his] actions. Thus, when conducting business with a forum in one context, [Bauer] should not have to wonder whether some aggregation of other past and future forum contacts will render [him] liable to suit there."*RAR.,* 107 F.3d at 1278. Even assuming that running CD Saver could somehow subject Bauer to personal jurisdiction, Bauer has demonstrated that CD Saver and Azuradisc's combined sales made in Illinois amount to approximately 1% of those companies total sales. There is no evidence that Bauer has solicited or targeted business in Illinois on Azuradisc's behalf, and absent specific solicitation and targeting of Illinois residents, this Court is hesitant to exercise personal jurisdiction over Bauer. This is because the fact that Bauer conducted an business with an Illinois resident does not create personal jurisdiction over him. *Hot Wax, Inc. v. Stone Soap, Co.,* No. 97 C 6878, 1999 WL 183776, at *4 (N.D.Ill. March 25, 1999). Plaintiffs also point to the fact that Bauer conducted a conversation with one of Plaintiff's representatives and sent information in reference to his patents. However, Plaintiffs conveniently fail to mention that it was Specialty Store's representative who initiated the phone call and visited Bauer at his Arizona home. "[C]ontacts resulting from the 'unilateral activity' of others do not count."*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

Page 9

*Inc.,* 148 F.3d 1355, 1359 (Fed.Cir.1998) (citing *Burger King,* 471 U.S. at 475 & n. 17). These facts are not sufficient to sustain jurisdiction over Bauer based on the well-established notion of minimum contacts under the *International Shoe* standard. In fact, based on the facts presented, Bauer's contact with Illinois falls within the realm of minuscule rather than minimum contacts.

**\*9** Finally, there can be no doubt that Bauer did not have continuous and systematic contact with Illinois. Plaintiffs point to the fact that between 1997 and 1999, Bauer ran CD Saver and solicited business from Illinois residents during that time. (Pls.'s Ex. 5 at 2 ¶ 1). However, a review of Plaintiffs' exhibits and Bauer's affidavit do not support the allegation that Bauer did business with Illinois residents while he ran CD Saver. Even if Plaintiffs could establish that Bauer did solicit Illinois residents, the fact that those solicitations ended two years prior to suit negates any continuous and systematic contact Bauer may have had with Illinois. *Rokeby-Johnson v. Derek Bryant Ins.,* 594 N.E.2d 1190, 1196-97 (Ill.App.Ct.1992); *Reeves v. Baltimore & Ohio R.R. Co.,* 526 N .E.2d 404 (Ill.App.Ct.1992).

### 2. Personal Jurisdiction Over Azuradisc

Azuradisc argues that this Court lacks personal jurisdiction over it because the volume of sales to Illinois consists of a very small percentage of its total sales. Plaintiffs counter that because Azuradisc maintains a website, has distributed flyers and postcards as solicitations, and sold more than $25,000 in merchandise, this Court should exercise personal jurisdiction over the corporation.FN5 This Court finds that it does not have jurisdiction over Azuradisc because its contacts with Illinois are insufficient.

> FN5. Plaintiffs assert that Azuradisc is large enough to make sales in more than twenty countries around the world and sustain a branch office in New Zealand. While

this fact may submit Azuradisc to personal jurisdiction in those countries, it has no bearing on whether this Court may exercise personal jurisdiction over Azuradisc.

Azuradisc contends that its connection with Illinois is of such a minimal extent that it should not reasonably have anticipated being haled into court. This Court must make two inquiries in determining whether jurisdiction exists over an out-of-state defendant, whether Illinois' long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates due process. *Graphic Controls Corp. v. Utah Medical Products,* 149 F.3d 1382, 1385 (Fed.Cir.1998). As has been discussed, because this is a patent case, this Court must rely on the law of the Federal Circuit in its due process analysis of Defendants' contact with Illinois. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543-44 (Fed.Cir.1995)."However, in interpreting the meaning of state long-arm statutes, [the Federal Circuit] elect[s] to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process."*Graphic Controls,* 149 F.3d at 1386.

### a. Azuradisc's volume of sales

Pursuant to the Illinois long-arm statute, a defendant is subject to jurisdiction of its courts if the defendant conducted the transaction of any business within the state. 735 ILCS 5/2-209(a)(1). Where jurisdiction is predicated upon subsection (a), only causes of action arising from the enumerated acts may be asserted against a nonresident defendant. 735 ILCS 5/2-209(f). In this case, Azuradisc points to its small percentage of sales, roughly one percent, in the state to support its claim that it cannot be subject to this Court's jurisdiction. "However, no case has yet held that revenue derived from this State is the dispositive variable in resolving whether *in personam* jurisdiction may be asserted against a foreign corporation."*Hulsey v. Scheidt,* 630 N.E.2d 905, 909 (Ill.App.Ct.1994).*See also Rokeby-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

Page 10

*Johnson v. Derek Bryant Ins. Brokers, Ltd.,* 594 N.E.2d 1190 (Ill App.Ct.1992) (where the court found that the defendant may have earned $5 million in Illinois of no consequence to its analysis of wether the defendant was "doing business" in the state); *Kadala v. Cunard Lines,* 589 N.E.2d 802 (Ill.App. Ct 1992) (where the court held that substantial revenues earned from extensive advertising in Illinois does not alone submit a foreign corporation to jurisdiction under the "doing business" test); *Dal Ponte v. Northern Manitoba Native Lodges, Inc.,* 581 N .E.2d 329 (Ill.App.Ct.1991) (where the court declined to find personal jurisdiction over a Canadian corporation which solicited customers at Illinois fishing shows and accepted reservations because its relationship with the state was occasional and casual); *Radosta v. Devil's Head Ski Lodge,* 526 N.E.2d 561 (Ill.App.Ct.1988) (where the court found that defendant's advertising in Illinois, maintaining an Illinois phone number, selling its services through local ski shops, purchasing billboard space in Illinois, and participating in annual exhibitions in Illinois were insufficient because defendant's presence in the state was occasional)."Rather than emphasizing the amount of the financial benefit it derives from the consumers of Illinois, the cases seem to indicate that the key consideration is the corporation's temporal relationship with the State."*Id.*

**\*10** In this case, there can be no doubt that Azuradisc has no temporal relationship with Illinois. Azuradisc is not licensed to do business in Illinois, nor does it have a registered agent in the state. Azuradisc does not own property or occupy any real or personal property in Illinois. Azuradisc does not maintain an Illinois telephone number. Finally, Plaintiffs have failed to demonstrate that the small percentage of Azuradisc's sales were made as the result of a continual rather than occasional transaction of business such that Azuradisc was "doing business" in the state. *Cook Assoc., Inc. v. Lexington United Corp.,* 429 N.E.2d 847, 852-53 (Ill.1981).

Plaintiffs also rely on the fact that Azuradisc advertised in Illinois to support their contention that personal jurisdiction exists. Plaintiffs point to 7,625 flyers which were mailed to Illinois in a one year period.[FN6]However, these mailings are insufficient to constitute the transaction of business in Illinois. This is because advertising and revenue alone are not a sufficient basis for the exercise of long-arm jurisdiction. *Kadala,* 589 N.E .2d at 807. This is because in this state, a significant distinction between "the transaction of business *in* Illinois and the transaction of business *with* an Illinois [resident]" exists. *Id.* (citations omitted).

> FN6. Between January 2000 and January 2001, Azuradisc sent 176,553 mailings to all fifty states, the District of Columbia, Guam and Puerto Rico. These mailings were sent by a direct mailing service company at Azuradisc's request.

[I]f the mere payment of money, shipment of goods into, or advertisement in Illinois were sufficient to confer long arm jurisdiction it would follow that the very existence of a business relationship with an Illinois resident would automatically sustain Illinois jurisdiction. It is clear that no federal or state court would confer such a broad grant of personal jurisdiction.
*Id.* (quoting *Braasch v. Vail Assoc., Inc.,* 370 F.Supp. 809, 814 (N.D.Ill.1973)."At best, advertising amounts only to solicitation, which ...is insufficient to submit a defendant to jurisdiction under the 'doing business' test postulated under section 2-209 of the long-arm statute."*Id.* (citing *Radosta,* 526 N.E.2d 561).

The fact that a defendant who solicits business in the State derives revenue from the State would seem to be implicit, even though not expressly discussed in the cases, as a natural result [of] successful solicitation, and not an independent factor upon which to determine that a non-resident corporation is "doing business" in the State. Moreover, defendant here did not receive any revenues in this state; all payments were received in its [Arizona] office.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

Accordingly, [this Court holds] that defendant is not "doing business" in Illinois so as to be amenable to [personal] jurisdiction.

*Kadala* 589 N.E.2d at 810.

### b. Azuradisc's Internet presence

Defendants argue that their website, which is accessible in Illinois, is also not sufficient to establish jurisdiction. They assert the Azuradisc website is a passive website which merely posts information over the Internet. More specifically, Azuradisc's website does not specifically invite Illinois residents to transact business with Azuradisc, instead, the website merely presents a general advertisement which is accessible worldwide. Plaintiff argues that because the website includes detailed descriptions of products and services, sales information, price lists, and toll free numbers, Defendants have sufficiently engaged with Illinois residents to warrant the exercise of jurisdiction.

**\*11** It is well-settled that "no court has ever held that an Internet advertisement alone is sufficient to subject a party to jurisdiction in another state. In each case where personal jurisdiction was exercised, there [was] something more to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state."*Vitullo v. Velocity Powerboats, Inc.,* No. 97 C 8745, 1998 WL 246152, at \*5 (N.D. Ill. April 27, 1998) (quoting *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998)) (internal quotations omitted.) The general framework of decisions regarding personal jurisdiction as the result of an Internet site is based largely on a sliding scale approach that divides Internet activities into three categories. The first category consists of situations in which a defendant clearly does business over the Internet such that the websites are "clearly interactive, allowing the transaction of business between the end user and the website's owner."*Euromarket Designs, Inc. v. Crate & Barrel, Ltd.,* 96 F.Supp.2d 824, 837 (N.D.Ill.2000). This Court has personal

jurisdiction over transactions such as these because the defendant "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet."*Zippo Manufactuing Co. v. Zippo Dot Com. Inc.,* 952 F.Supp. 1119, 1123-24 (W.D.Pa.1997). The second category is a hybrid category, in which the websites are "somewhat interactive, however, not to the extent of the first category."*Euromarket,* 96 F.Supp.2d at 838 (citing *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996)). This is because the website "is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."*Zippo,* at 1124.Finally, the third category deals with passive websites "where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction."*Id.*

After considering Azuradisc's website under the sliding scale approach, it is clear that it is insufficient to subject it to this Court's personal jurisdiction. Plaintiffs claim that Azuradisc's website contains detailed product and service descriptions with toll-free numbers and advertising. The site also allows prospective clients to contact Azuradisc via e-mail. However, Plaintiffs admit that no orders can be placed directly from the website. In cases where a user can exchange information with the host computer, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."*Zippo,* 962 F.Supp. at 1124. In this case, Plaintiffs have failed 'to allege facts to support a reasonable inference that electronic mail communications were made with Illinois residents, or that the communications were of the quality required by courts who have found personal jurisdic-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.))

Page 12

tion in cases of this kind."*Transcraft Corp. v. Doonan Trailer Corp.,* No. 97 4943, 1997 WL 733905, at *9 (N.D.Ill. Nov. 17, 1997). The website allows no business transactions to be performed in terms of payment, placing of orders, etc. It merely posts information and requires that customer inquiries be performed by telephone or electronic mail. Furthermore, "national advertisements (including those on the Internet) are insufficient to subject a defendant to jurisdiction in Illinois."*Id.* (citing *IDS,* 958 F.Supp. at 1268)). In order for Defendants to be subject to this Court's jurisdiction, Plaintiffs must establish evidence that Defendants intended their Internet advertisements to reach Illinois in particular. *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 41 (D.Mass.1997). Plaintiffs have failed to establish such evidence. Accordingly, this Court cannot find that Defendants were purposefully serving an Illinois market and the website cannot be used to establish jurisdiction. *Transcraft,* 1997 WL 733905, at 810.

### C. Lack of Proper Venue

**\*12** Defendant argues in the alternative that if personal and subject matter jurisdiction were found, this Court should transfer the case to Arizona based on improper venue. Plaintiffs assert that venue is proper under 28 U.S.C. § 1391, and cites a Federal Circuit case which allows for venue if personal jurisdiction is found over Defendants. *North American Phillips Corp. v. American Vending Sales, Inc.* 35 F.3d 1576, 1577 n. 1 (Fed.Cir.1994). However, this Court has determined that it lacks personal jurisdiction over Defendants, therefore, the motion to transfer is dismissed as moot.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Jurisdiction (doc. # 4) is GRANTED. Defendants' Motion to Transfer for Improper Venue (doc. # 4) is DISMISSED as moot. This case is accordingly DISMISSED.

IT IS SO ORDERED.

N.D.Ill.,2001.
Trost v. Bauer
Not Reported in F.Supp.2d, 2001 WL 845477 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.))**

Page 1

Stericycle, Inc. v. Sanford
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
STERICYCLE, INC., Plaintiff,
v.
Craig SANFORD and Mary Jo Sanford, Defend-
ants.
**No. 02 C 5200.**

Dec. 20, 2002.

*MEMORANDUM OPINION AND ORDER*

LEFKOW, J.
*1 In this action brought by plaintiff, Stericycle,
Inc. ("Stericycle"), alleging state law breach of
contract claims in a three-count Complaint, defend-
ants, Craig Sanford ("Craig") and Mary Jo Sanford
("Mary Jo") (collectively the "Sanfords"), have
moved under Rule 12(b)(2), Fed.R.Civ.P., to dis-
miss Stericycle's Complaint for lack of personal
jurisdiction, or, alternatively, under 28 U.S.C. §
1404(a), to transfer venue of this case to the Eastern
District of Pennsylvania. Stericycle is a Delaware
corporation with its principal place of business in
Illinois. Craig and Mary Jo are citizens of
Pennsylvania. The amount in controversy exceeds
$75,000. The court, therefore, has jurisdiction over
this case pursuant to 28 U.S.C. § 1332(a)(2)
(diversity). For the reasons set forth below, the
court grants the motion to dismiss for lack of per-
sonal jurisdiction under Rule 12(b)(2) and denies as
moot the motion to transfer venue under 28 U.S.C.
§ 1404.

MOTION TO DISMISS STANDARDS

In deciding a motion to dismiss for lack of personal
jurisdiction, the court must take as true any juris-
dictional allegations asserted by the plaintiff in the

Complaint. *Turnock v. Cope,* 816 F.2d 332, 333
(7th Cir.1987). The court may also consider affi-
davits submitted in connection with the motion,
*Curry v. Vencor Hosp.,* No. 01 C 4256, 2002 WL
398602, at *1 (N.D.Ill. March 14, 2002); *R.R. Don-
nelly & Sons Co. v. Intera Info. Technologies
Corp.,* No. 91 C 2511, 1991 WL 191588 (N.D.Ill.
Sept. 18, 1991), but will resolve conflicts of fact in
favor of the plaintiff. *John Walker & Sons, Ltd. v.
DeMert & Doughtery, Inc. et al.,* 821 F.2d 399, 402
(7th Cir.1987), citing *Deluxe Ice Cream Co. v.
R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th
Cir.1984). Ultimately, it is the plaintiff's burden to
establish personal jurisdiction. *Central States,
Southeast and Southwest Areas Pension Fund v.
Reimer Express World Corp.,* 230 F.3d 934, 939
(7th Cir.2000).

BACKGROUND

Stericycle is the largest provider of regulated med-
ical waste management services in the United
States, providing regulated medical waste collec-
tion, transportation, treatment and disposal services
to over 275,000 customers in 48 states. (Compl.¶
2.) Craig and Mary Jo, husband and wife, are entre-
preneurs who have owned and operated a number
of businesses that involved the processing and dis-
posal of medical waste, including Sanford Motors,
Inc. (located and incorporated in Pennsylvania),
East Coast Medical Waste, Inc. (located and incor-
porated in New Jersey), and Bucks County Re-
source Recovery, Inc. (located and incorporated in
Pennsylvania) (collectively "SMI Businesses").
(Compl. ¶ 3; Craig Sanford Aff. ¶¶ 10-12.)

Med/Waste, Inc. ("Med/Waste"), which is not a
party to this action, was a holding company that,
through its subsidiary companies, provided medical
waste management services primarily in the eastern
and southeastern United States. (Compl.¶ 6.)
Through its subsidiaries, Med/Waste also operated
medical waste disposal and treatment facilities



DEFENDANT'S
EXHIBIT
3

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

throughout its service area, including a medical waste autoclave treatment facility located in Marcus Hook, Pennsylvania ("Marcus Hook Facility").(*Id.*) In 1998, Med/Waste acquired the SMI Businesses from the Sanfords.[FN1](*Id.*)

> FN1. Stericycle had discussions at this time to purchase the SMI Businesses from the Sanfords, and during these discussions the Sanfords visited Stericycle's office in Illinois. (ten Brink Decl. ¶ 5.)

**\*2** In or about early 2000, Stericycle negotiated with Med/Waste for the purchase of some or all of Med/Waste's subsidiary businesses or assets. (Compl. ¶ 70.) On May 30, 2002, Stericycle and Med/Waste entered into a letter of intent ("Stericycle LOI") that set forth the terms of a possible acquisition.(*Id.*) Portions of the Stericycle LOI were made expressly binding on the parties even if a deal was not later completed, including a provision which provided in pertinent part:

In the event Stericycle does not purchase all of the assets or of legal entities that make up the [Med/Waste] Business, Stericycle will have a right of first refusal to acquire any remaining assets or entities of the Business for a period of two years following closing or, if this letter is terminated prior to closing, for a period of one year following the termination of this letter.

(Compl.¶ 8.) Stericycle did not subsequently acquire the assets or entities that comprised the Med/Waste business and, accordingly, Stericycle had a right of first refusal to acquire Med/Waste's assets or entities. (Compl.¶ 9.)

At all times pertinent to this lawsuit, Med/Waste was experiencing significant financial difficulties, with lenders and other creditors who held security interests in certain Med/Waste assets demanding that Med/Waste fulfill its obligations to them. (Compl.¶ 10.) As of early October 2001, Med/Waste owed the Sanfords $7 million from its acquisition of the SMI Businesses. (Compl.¶ 11.) In

an effort to resolve their claims against Med/Waste, the Sanfords entered into discussions with Med/Waste for the Sanfords to re-acquire the SMI Businesses from Med/Waste, along with the Marcus Hook Facility (collectively "the Assets"). (Compl.¶ 12.)

In the summer of 2001, Craig called Stericycle's CFO, Frank ten Brink ("ten Brink"), at ten Brink's office in Illinois. During that call, Craig initiated discussions with Stericycle concerning Stericycle's right of first refusal on the Assets. Since the Sanfords did not intend to operate the Assets but instead wished to sell them, and because Stericycle had an interest in acquiring the Assets so long as it had assurances that the Sanfords would not disrupt any acquisition, Stericycle and the Sanfords discussed the possibility of Stericycle waiving its rights under the Stericycle LOI whereby the Sanfords could then reacquire the Assets from Med/Waste and sell them to Stericycle. (Compl. ¶ 18; ten Brink Decl. ¶ 9.) Thereafter, Craig initiated frequent telephone discussions with ten Brink about a possible Stericycle deal with the Sanfords. These calls included a July 23, 2001 call in which a deal was discussed, an August 20, 2001 call by Craig informing Stericycle that the Sanfords had made an offer to Med/Waste, an August 27, 2001 call updating Stericycle on the proposed deal with Med/Waste, followed by at least seven more such updates, and a September 11, 2001 call in which Craig advised ten Brink that the Sanfords had reached a tentative agreement with Med/Waste. (ten Brink ¶¶ 12-14.)

**\*3** On or about October 3, 2001, the Sanfords submitted a letter of intent to Med/Waste ("Sanford LOI") offering to purchase the Assets for a total price of $11.7 million which price included $4.5 million in cash and forgiveness of Med/Waste's $7 million debt to the Sanfords. (Compl.¶ 13.) Negotiations also continued between Stericycle and the Sanfords, with the Sanfords corresponding with Stericycle on an October 4 phone call and fax, an October 6 phone call, an October 8 faxed agree-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.))

Page 3

ment for assignment, and an October 9 revised agreement. (ten Brink Decl. ¶ 17.)

On October 17, 2001, the Sanfords faxed to Stericycle a signed "Agreement for Assignment of Purchase Rights, and Right of First Refusal, and Proposed Acquisition Terms" ("October 17 Agreement"), to which Stericycle agreed.[FN2] (Compl.¶ 20.) The October 17 Agreement provided that Stericycle would purchase the Assets from the Sanfords pursuant to terms set forth on an attachment to the Agreement. (Compl.¶ 21.) After entering into the October 17 Agreement, the Sanfords continued their negotiations with Med/Waste and, subsequently, with Med/Waste's bank, which came into possession of the Assets as a result of certain claims the bank made against Med/Waste. (Compl.¶ 25.) Throughout these negotiations, the Sanfords sought Stericycle's assistance with respect to the dealings with Med/Waste and Med/Waste's bank. (ten Brink Decl. ¶ ¶ 19-20.) This included sending Stericycle copies of draft letters on October 19, November 16 and 17 and seeking advice from Stericycle's attorneys located in Illinois throughout the month of December.

> FN2. This agreement was originally drafted by Stericycle. (ten Brink Decl. ¶ 16.)

In January 2002, the Sanfords acquired the Assets from Med/Waste. Shortly thereafter, the Sanfords indicated to Stericycle that they refused to carry out the terms of the October 17 Agreement because they believed more favorable terms were available to them from a third-party. (Compl.¶ 29.) From January through July 2002, Stericycle engaged in negotiations with the Sanfords in an attempt to convince them to carry out the terms of the October 17 Agreement, and additionally offered the deal to the Sanfords on more favorable terms. (Compl.¶ 30.) The negotiations included letters faxed to Stericycle, telephone conversations between Craig and ten Brink, and a June 2002 visit to Chicago by the Sanfords to attempt to negotiate a new deal. (ten Brink Decl. ¶ 25.) This Chicago visit lasted for two days, and culminated in a "handshake deal," which

the next day the Sanfords allegedly reneged on. (ten Brink Decl. ¶ 26.) Throughout these negotiations, the Sanfords informed Stericycle that they intended to sign a letter of intent from another prospective buyer, but the Sanfords would not disclose the letter of intent or other documentation related to the purported offer. (Compl.¶ 31.) No subsequent agreement was reached between Stericycle and the Sanfords. (Compl.¶ 23.)

On July 23, 2002, Stericycle filed its three-count Complaint alleging that the Sanfords breached the October 17 Agreement by (i) refusing to sell the Med/Waste assets to Stericycle, as required by Section 2.4 of the October 17 Agreement (Count I); (ii) refusing to assign their rights to the Marcus Hook Facility to Stericycle, as required by Section 1.1 of the October 17 Agreement (Count II); and (iii) refusing to provide Stericycle with sufficient information about the third-party offer to purchase the Med/Waste assets as to enable Stericycle to exercise its right of first refusal, as required by Sections 2.1 and 2.2 of the October 17 Agreement (Count III). Stericycle seeks to preliminarily and permanently enjoin the Sanfords from selling or otherwise transferring ownership of the Assets to a third-party other than Stericycle, specific performance of the October 17 Agreement and compensatory damages.

## DISCUSSION

*4 The Sanfords have moved to dismiss the action for lack of personal jurisdiction pursuant to Rule 12(b)(2), or, alternatively, to transfer venue of this case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

### A. Personal Jurisdiction

A federal district court sitting in diversity has personal jurisdiction over a defendant when a court of the state in which it sits would have such jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd .,* 107 F.3d 1272, 1275 (7th Cir.1997); *Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir.1995), *cert. denied.*518

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.))

Page 4

U.S. 1004 (1996). Three distinct obstacles stand in the way of a plaintiff attempting to establish personal jurisdiction: "1) state statutory law, 2) state constitutional law, and 3) federal constitutional law."*RAR, Inc.,* 71 F.3d at 1276. With respect to state statutory law, the Illinois long-arm statute provides that an Illinois court "may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."735 ILCS 5/2-209(c). Thus, the inquiry becomes whether the Illinois and federal constitutions would permit personal jurisdiction over the Sanfords. *See RAR, Inc.,* 71 F.3d at 1276;*Watchworks, Inc. v. Total Time, Inc.,* No. 01 C 5711, 2002 WL 424631, at *4 (N.D.Ill. Mar. 19, 2002).

The Illinois Constitution allows for personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois."*Rollins v. Ellwood,* 141 Ill.2d 244, 275, 565 N.E.2d 1302, 1316 (1990). Typically, because of the limited number of cases analyzing personal jurisdiction on state constitutional grounds, courts look to the federal due process clause to construe the Illinois due process clause. *See Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 725 (7th Cir.2002); *RAR, Inc .,* 71 F.3d at 1276-77;*Curry v. Vencor Hosp.,* No. 01 C 4256, 2002 WL 398602, at *2 (N.D.Ill. Mar. 14, 2002); *McMurray v. Improvement Inc.,* No. 00 C 7137, 2001 WL 561376, at *1 (N.D.Ill. May 22, 2001). This court will do the same, as neither party makes any argument on state constitutional grounds and instead argue that this case is resolved by reference to federal constitutional standards.

"The Due Process Clause of the Fourteenth Amendment limits when a state may assert *in personam* jurisdiction over nonresident individuals and corporations."*RAR, Inc.,* 107 F.3d at 1277, citing *Pennoyer v. Neff,* 95 U.S. 714, 733 (1878). In order to be subject to *in personam* jurisdiction, the defend-

ant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940). This standard, however, varies depending on whether the state asserts "general" or "specific" jurisdiction over a defendant.

*1. General Jurisdiction*

**\*5** General jurisdiction refers to suits "neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum."*RAR, Inc.,* 107 F.3d at 1277, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). Stericycle fails to show that the Sanfords' contacts with Illinois were continuous and systematic enough to give rise to the level of general jurisdiction. As such, the court concludes that general jurisdiction does not exist over the Sanfords.

*2. Specific Jurisdiction*

Specific jurisdiction refers to personal jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum."*Helicopteros,* 466 U.S. at 414 n. 8. Under a specific jurisdiction inquiry, the court looks to see if a defendant has the minimum contacts necessary to make the assertion of personal jurisdiction fair and reasonable under the circumstances. *Burger King v. Rudzewicz,* 471 U.S. 462, 476-77 (1985). Crucial to this inquiry is a showing that the defendant "should reasonably anticipate being haled into the court [in the forum state] because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities' there."*RAR, Inc.,* 107 F.3d at 1277, quoting *Burger King,* 471 U.S. at 474-75. In other words, it must be foreseeable to the defendant that their contact with the forum state make it reas-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.))**

onable to subject them to personal jurisdiction. *Id.*

Stericycle attempts to illustrate the Sanfords' contacts with Illinois by separating them into categories, including: (1) the Sanfords' initial contact with Illinois, consisting mostly of discussions Stericycle had with the Sanfords in 1997 and 1998 concerning Stericycle's interest in purchasing the SMI Businesses and a trip to Illinois during these discussions; (2) the Sanfords' overtures to Stericycle regarding a possible deal involving the Assets, which included Craig initiating contact with ten Brink, frequent telephone discussions about a possible deal, and the faxing of several draft agreements to Stericycle in Illinois; (3) the October 17 Agreement itself, which involved Assets that were not located in Illinois; (4) the Sanfords seeking assistance from Stericycle in closing a deal for the Assets from Med/Waste, including sending drafts to Stericycle of possible agreements between the Sanfords and Med/Waste and soliciting advice from Stericycle's lawyers; and (5) the Sanfords attempt to negotiate a new deal with Stericycle, including telephone and letter contact with Stericycle in Illinois and a trip to Illinois in an attempt to consummate a deal.

In breach of contract cases, the court looks only to the "dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis."*Id.* at 1278, quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,* 75 F.3d 147, 153 (3d Cir.1996). The court may not, therefore, aggregate all the Sanfords' contacts with Illinois "no matter how dissimilar in terms of geography, time, or substance."*Id.* Instead, Stericycle's cause of action must *"directly arise* out of the specific contacts between the defendant and the forum state."*Id.* (emphasis in original), quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995).

**\*6** Any negotiations or visits to Illinois concerning Stericycle's interest in purchasing the SMI Businesses from the Sanfords in 1997 and 1998 will not be considered, as those contacts do not stem from the October 17 Agreement at issue here. Conversely, negotiations and contacts formulated in

furtherance of the October 17 Agreement are properly considered. The more difficult question, however, is posed by the contacts after the October 17 Agreement. The Sanfords argue that these contacts should not be considered, as they do not give rise to the cause of action for the October 17 Agreement. The Sanfords maintain that, at most, these post-agreement contacts relate to the Sanfords' efforts to comply with the terms of the Agreement and/or concern negotiations to formulate an entirely new deal.

The dealings between the parties in regard to the disputed contract do not vanish after the contract itself is formed. Stericycle points to contacts the Sanfords had after the October 17 Agreement that both informed Stericycle of developments in a separate contract closely related to the October 17 Agreement and attempted to convince the Sanfords to comply with the October 17 Agreement. The court refuses to take such a restricted reading of "arising out of the contract" as to bar inquiry into these post-Agreement contacts that related to the October 17 Agreement itself. That being said, the court will not consider the Sanfords' trip to Illinois in June 2002, as ten Brink himself admitted that this trip did not relate to the October 17 Agreement but instead was for the purpose of attempting to "negotiate a new deal." (ten Brink Decl. ¶ 26.)

Having determined which contacts are properly examined in a specific jurisdiction analysis, the court addresses the ultimate question: do these contacts constitute sufficient minimum contacts with Illinois and make the assertion of personal jurisdiction foreseeable and otherwise reasonable? Relevant factors in contract cases include who initiated the transaction, where the contract was entered into, and where performance of the contract was to take place. *E.g., General Binding Corp. v. McBride,* No. 01 C 5860, 2002 WL 825032, at \*2 (N.D. Ill. April 30, 2002); *Unis Int'l Corp. v. M.L. Mktg. Co.,* No. 93 C 0329, 1993 WL 116744, at \*3 (N.D. Ill. April 14, 1993).

The Sanfords concede that they initiated the contact

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.))**

Page 6

with Stericycle that led to the making of the October 17 Agreement. (Def. Rep. at 6.) They maintain, however, that: (1) all the negotiations with Stericycle consisted of telephone calls and/or facsimile transmissions and did not take place in person in Illinois; (2) the October 17 Agreement, originally drafted by Stericycle in Illinois, was reviewed, revised and executed by the Sanfords in Pennsylvania; (3) all the Assets subject to the contract were located outside of Illinois; and (4) the contract required no performance in Illinois.

Viewing the contacts in their totality, the court cannot say that the Sanfords had such contacts as to make it foreseeable that they would be subject to suit in Illinois. While the Sanfords initiated the discussions concerning the October 17 Agreement, "[t]he constitutionality of jurisdiction does not turn on which party 'started it.' Rather, pinning down which party initiated the transaction is merely one helpful factor in the jurisdictional equation."*Logan Prods., Inc. v. Optibase, Inc.,* 103 F.3d 49, 53 (7th Cir.1996). Other factors, outside of the initiation of the contract, counsel against personal jurisdiction under the facts of this case. While the Sanfords did have frequent telephone and facsimile contact with Stericycle in Illinois, these communications related to the contract which was to be performed entirely outside of Illinois, a factor weighing against personal jurisdiction. *See Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.,* 18 F .3d 389, 396 (7th Cir.1994). Moreover, the Sanfords never traveled to Illinois in negotiating the contract, did not execute any part of the contract in Illinois and none of the Assets were located in Illinois.

**\*7** "[A]n out-of-state party's contract with an in-state party is alone not enough to establish requisite minimum contacts."*RAR, Inc.,* 107 F.3d at 1277, citing *Burger King,* 471 U.S. at 478. Instead, the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant."*Id.,*

quoting *Burger King,* 471 U.S. at 479. The parties' negotiations and future consequences fail to make it clear that the Sanfords in any way purposefully availed themselves of the privilege of conducting business in Illinois. The only connection Illinois has with this case is that an out-of-state party initiated negotiations with an Illinois corporation with a presence in forty-eight states by telephone, fax and mail on a contract to be performed entirely outside of Illinois concerning assets located outside of Illinois. If the court were to find personal jurisdiction it would, in essence, be simply asserting personal jurisdiction because an out-of-state party negotiated a contract with an in-state party. As the Supreme Court made clear in *Burger King,* however, contacts that result from such a contract are, in and of themselves, not sufficient to rise to the level of minimum contacts necessary for personal jurisdiction. 471 U.S. at 478.

Stericycle responds by pointing to numerous cases that it believes establish jurisdiction but that this court concludes are distinguishable. For example, in *Global Relief v. New York Times Co.,* No. 01 C 8821, 2002 WL 31045394 (N.D.Ill. Sept. 11, 2002), the court allowed personal jurisdiction over an out-of-state newspaper with a small circulation in Illinois because the newspaper was fully aware that it was distributing copies of its newspaper in Illinois.*Id.* at \*7. No similar contacts with Illinois are present in this case. Moreover, in *General Binding Corp.,* 2002 WL 825032, the court found personal jurisdiction over a defendant where all negotiations were done by mail, phone or electronically because the contract was to be at least partially performed in Illinois and the contract itself provided for the application of Illinois law, a factor the court found to be "compelling evidence of intent." *Id.* at \*2. This court could continue to list cases, but the point is clear: cases Stericycle points to with contracts involving out-of-state parties at the very least also included some connection or performance related to Illinois. The court does not believe such facts are present here. As such, the court concludes that it lacks jurisdiction over the Sanfords.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.))**

B. Motion to Transfer Venue

The Sanfords further move, in the alterative, to transfer venue in this case to the Eastern District of Pennsylvania under the provisions of 28 U.S.C. § 1404. This motion is denied as moot.

### CONCLUSION

For the reasons stated above, the court grants the Sanfords' motion to dismiss for lack of personal jurisdiction [# 5-1] and denies as moot the Sanfords' motion to transfer venue [# 5-2]. This case is dismissed without prejudice.

N.D.Ill.,2002.
Stericycle, Inc. v. Sanford
Not Reported in F.Supp.2d, 2002 WL 31856720 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                         Page 1
Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.), 45 UCC Rep.Serv.2d 702
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.))**

**c**

Federated Dept. Stores, Inc. v. U.S. Bank Nat. Ass'n
N.D.Ill.,2001.

United States District Court, N.D. Illinois, Eastern
Division.
FEDERALED DEPARTMENT STORES, INC.,
Plaintiff,
v.
U.S. BANK NATIONAL ASSOCIATION, Defend-
ant.
**No. 00 C 6169.**

May 11, 2001.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.
**\*1** The facts of this case involve alleged violations
of the Nebraska Uniform Commercial Code and
Nebraska common law by defendant, U.S. Bank
National Association. Plaintiff, Federated Depart-
ment Stores, Inc., sued defendant for allegedly hon-
oring a check without the necessary endorsements.
The defendant has moved to transfer this case to the
United States District Court, District of Nebraska.
For the reasons provided in this Memorandum
Opinion and Order, defendant's motion is granted.

*FACTS*

Plaintiff, Federated Department Stores, Inc.
("Federated"), is a Delaware corporation with its
principal place of business in Cincinnati, Ohio.
(Compl.¶ 1.) U.S. Bank is a national banking asso-
ciation organized under the laws of the United
States with its principal place of business in Min-
neapolis, Minnesota.(*Id*. ¶ 2.) The U.S. Bank
branches primarily involved in this case are located
in Omaha, Nebraska and Fremont, Nebraska.
(Def.'s Mot. Transfer, Erikson Aff. Ex. 3 ¶¶ 6,
8-10.) UFX Transportation Corporation ("UFX") is

a corporation with its corporate headquarters form-
ally in Omaha and now in Fremont Nebraska. (*Id*. ¶
6.)

On December 21, 1998, Kemper Insurance Com-
pany ("Kemper") issued a check from its office in
Long Grove, Illinois in the amount of $448,888.81
jointly payable to Federated and UFX. (Compl.¶ 5.)
On March 17, 1999 Kemper issued another check
from the same office in the amount of $11,720.40
to the same parties.(*Id*. ¶ 6.) The checks were
drawn on Kemper's accounts in Illinois and ad-
dressed to UFX in Fremont, Nebraska. (*Id*. ¶¶
5-6.)UFX presented the checks for deposit and pay-
ment with the U.S. Bank in Nebraska. (*Id* . ¶¶
7-8.)Federated alleges that the two checks were im-
properly negotiated by the U.S. Bank because they
lacked the plaintiff's necessary endorsement. (*Id*. ¶¶
7-10.)In doing so, U.S. Bank allegedly violated the
Nebraska Uniform Commercial Code and Nebraska
common law. (*Id*. ¶¶ 14-28.)

Federated plans to present testimony of employees
of its logistics department located at its corporate
transportation office in Atlanta, Georgia and testi-
mony of employees of its risk management depart-
ment located at its headquarters in Cincinnati,
Ohio. Relevant documents are located in these de-
partments and can be easily transported. (Pl.'s Br.
Opp. Def.'s Mot. Transfer at 3.)

U.S. Bank claims that they will present a number of
non-Illinois resident witnesses. Donald Erikson, a
Nebraska resident, is specified as providing key
testimony in U.S. Bank's defense. (Def.'s Reply Br.
Supp. Mot. Transfer, Erikson Suppl. Aff. Ex. A ¶
2.) According to the defendant all of the crucial
witnesses are non-parties and residents of Neb-
raska. (*Id*. ¶ 3.)

*DISCUSSION*

A motion to transfer is governed by 28 U.S.C. §
1404(a). A federal district court, under 28 U.S.C. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



DEFENDANT'S
EXHIBIT
4

1404(a) may "for the convenience of the parties and witnesses and in the interest of justice ... transfer any civil action to any other district or division where it might have been brought."28 U.S.C. § 1404(a); *Amoco Oil Co. v. Mobile Oil Corp.,* 90 F.Supp.2d 958, 959 (N.D.Ill.2000), *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986). Such a transfer is appropriate where "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice."*United Air Lines, Inc. v. Mesa Airlines, Inc.,* 8 F.Supp.2d 796, 798 (N.D.Ill.1998), *Medi USA v. Jobst Inst., Inc.,* 791 F.Supp. 208, 210 (N.D.Ill.1992). The court must analyze all three factors. Despite a party's ability to waive its convenience as a reason to transfer, the "interests of justice" and "convenience of witnesses" may not be ignored and when weighed may require the transfer. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989).

**\*2** In deciding a motion to transfer pursuant to 28 U.S.C. § 1404(a), the court must analyze statutory factors in accordance with the circumstances of the case. *Coffey,* 796 F.2d at 219. Considering any factors for or against transfer "involves a large degree of subtlety and latitude, and therefore is committed to the sound discretion of the trial judge."*Id.* In order to aid the judge in weighing the factors, the "movant ... has the burden of establishing, by reference to particular circumstances, that the transfer forum is clearly more convenient."*Id.* at 220;*United Air Lines,* 8 F.Supp.2d at 798. Since neither party disputes that venue is proper in both this district and in the district of Nebraska, the court turns to the convenience issue.

Under section 1404(a) in order to effectuate an appropriate transfer, the transferee court must be clearly more convenient than the transferor court.*Amoco Oil,* 90 F.Supp.2d at 960. This determination is made on a case-by-case basis with a great

deal of discretion afforded to the court. *Id.*

In order to fully consider this final element of the § 1404 analyses, the court must address the private interests of the parties and the public interests of the court. *Medi USA,* 791 F.Supp. at 210. Factors in assessing private interests or considerations of convenience include: (1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses. *Amoco Oil,* 90 F.Supp.2d at 960. Public interest factors or interests of justice relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale. *Medi USA,* 791 F.Supp. at 210. These interests of justice "[are] a separate component of the § 1404(a) transfer analysis and may be determinative in a particular case, even if the parties and witnesses might call for a different result. *Coffey,* 796 F.2d at 220.

A. Private Factors

1. Plaintiff's Choice of Forum

Generally a plaintiff's choice of forum is entitled to substantial weight where it is the plaintiff's home forum. *United Air Lines,* 8 F.Supp.2d at 798;*Amoco Oil,* 90 F.Supp.2d at 960. While this choice is an important consideration, it is not absolute in determining whether a motion to transfer should be granted. *Id.* Where there exists a negligible connection between the plaintiff's choice and the claim, that "choice becomes only one of many factors the court considers."*Id.* at 961.

Although Federated has some connection to its chosen state, Illinois is not its home forum. The plaintiff is a Delaware corporation with its principal place of business in Ohio.

Additionally, a lack of connection to the heart of the controversy leads to further mitigation of the weight given to the plaintiff's choice. The only

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.), 45 UCC Rep.Serv.2d 702

**(Cite as: Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.))**

event connecting the present lawsuit to Illinois is that the checks at issue were drawn on Kemper's bank account in Long Grove, Illinois. However, the heart of Federated's claim relates to the wrongful payment and processing of those checks in Nebraska. Accordingly, Federated's choice has a less significant connection to the claim and is not afforded significant weight in the Court's analysis.

### 2. Situs of Material Events

**\*3** Count I of the complaint alleges that defendant violated the Nebraska Uniform Commercial Code ("Nebraska UCC") by setting forth payment on the checks without Federated's endorsement. (Compl.¶ 16.) Count II relates to a failure of the defendant to exercise ordinary care in handling the transaction by accepting for deposit and paying the checks without Federated's endorsement.(*Id.* ¶ 20.)Count III relates to a breach of warranty for the same act under the Nebraska UCC. (*Id.* ¶ 23.)Finally, Count IV alleges conversion based on the purported wrongful acceptance, deposit and payment of the checks. (*Id.* ¶ 26.)

The cause of action in this case did not arise in Illinois. The only connection to Illinois is that Kemper drew the two checks at issue, payable to Federated and UFX, in Illinois. The cause of action primarily arose from acts committed in Nebraska. The checks were deposited by UFX in the Fremont, Nebraska branch of U.S. Bank and processed at U.S. Bank's check processing center in Omaha, Nebraska. In this case, the signing, presentment, processing and payment of the checks are the important and allegedly wrongful acts, and Nebraska is the situs where the material events took place. Given the lack of dispute over the events in Illinois, the situs of material events weighs in favor of the transfer.

### 3. Relative Ease of Access to Sources of Proof

That either party can bring to court relevant documents that are not already there "neither mitigates

for or against transfer."*Hanley v. Omarc, Inc.,* 6 F.Supp.2d 770, 775 (N.D.Ill.1998). Federated claims that the documents necessary to prove its case are located neither in this district nor in Nebraska. Federated plans to use copies of the checks along with correspondence and other records located in Atlanta and Cincinnati. These documents are purportedly not voluminous and may be easily transported. Therefore, with regard to access to proof, the location of documents weighs neither for nor against a transfer.

Federated has also conceded that the relevant sources of proof in this case will be the documents and the witnesses called to testify about them. U.S. Bank plans to rely on the testimony of UFX representatives who presented the checks for payment. According to U .S. Bank, these crucial non-party witnesses are residents of Nebraska. It follows that the employees of UFX would have critical information concerning the relevant events.

Given the neutrality involving the relevant documents, the failure of Federated to indicate nonparty, Illinois resident witnesses, and the critical non-party, Nebraska resident witnesses to be called in U.S. Bank's defense, the relative ease of access to sources of proof weighs slightly in favor of a transfer.

### 4. Convenience of the Parties

Next, the court "considers the residence of the parties and their ability to bear the expense of trial in a particular forum."*Medi USA,* 791 F.Supp. at 210. Neither party is incorporated or has its principal place of business in Illinois or Nebraska. Both parties concede that regardless of where this case proceeds, both corporations will incur travel expenses as a result of this suit. The negligible difference in airfares and volume of flights between these cities illustrated by the plaintiff is not significant enough to weigh for or against transfer. Therefore, the convenience of the parties factor weighs neither in favor nor against a transfer.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.), 45 UCC Rep.Serv.2d 702
(Cite as: Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.))

### 5. Convenience of the Witnesses

**\*4** The identification of "potential, non-party witnesses who will be inconvenienced in having to travel to another forum to provide testimony" in an action is relevant to determining which venue is most convenient for the witnesses. *Amoco Oil,* 90 F.Supp.2d at 961. In fact, "the convenience of witnesses is often viewed as the most important factor in the transfer balance."*Hanley,* 6 F.Supp.2d at 775. In making this assessment the number of witnesses located in each forum and the importance of their testimony must be considered. *Medi USA,* 791 F.Supp. at 210. The party seeking a transfer must specify the key witnesses to be called and make a generalized statement of their testimony. *Heller Fin., Inc.,* 883 F.2d at 1293.

Defendant asserts that Donald L. Erikson, Vice President of U.S. Bank and Relationship Manager in charge of UFX's former account there, will testify about account activity, information concerning the Kemper checks at issue, and routing information regarding the funds from Kemper to UFX to Federated. (Def.'s Reply Br. Supp. Mot. Transfer, Erikson Suppl. Aff. Ex. A ¶ 2.) Erikson works and resides in the Omaha, Nebraska area.

Although the court assigns less weight to the location of employee-witnesses because they would presumably appear voluntarily to defend suit, the movant indicates a number of crucial witnesses that are non-parties and residents of Nebraska. *Hanley,* 6 F.Supp.2d at 775. Consistent with defendant's view, it is reasonable to assume that UFX employees would have information concerning what funds Kemper paid and the relationship of that money to Federated. The testimony of UFX employees therefore is critical with regard to plaintiff's right to recovery. UFX employees with the most knowledge concerning the relevant affairs have been listed by the movant as Tim Davis, President and CEO of UFX, who lives in Elkhorn Nebraska, Margie Russell, Secretary of UFX, who also lives in Elkhorn, Nebraska and Maura Cayson, who lives in Omaha, Nebraska. (Def.'s Reply Br. Supp. Mot. Transfer,

Erikson Suppl. Aff. Ex. A ¶ 3.)

U.S. Bank also indicates that bank employees of the First National Bank of Omaha ("First National") can testify as to whether certain funds were actually paid from UFX's main bank account at First National to Federated. Those witnesses are listed as Tom Pritchard, the officer in charge of UFX's account and his superior Stephanie Moline. (*Id.*) Both of these witnesses still work in Nebraska. (*Id.*) In sum, given U.S. Bank's presentation of pertinent non-party witnesses who either work or reside in Nebraska and Federated's failure to identify non-party witnesses either outside Nebraska or inside Illinois, this factor weighs heavily in favor of the transfer.

The convenience of witnesses factor, in conjunction with the situs of material events and the ease of access to sources of proof factors, weigh significantly in favor of a transfer to the District of Nebraska. When taking into account the neutrality of the convenience of the parties, the plaintiff's choice of forum has a minimal effect in the analysis. Therefore, the private factors collectively weigh in favor of the transfer to Nebraska.

### B. Public Factors

#### 1. The Court's Familiarity with Applicable Law

**\*5** Nebraska law governs plaintiff's claims. Two claims are based upon the Uniform Commercial Code and two claims are based on Nebraska common law negligence and conversion. Although the Nebraska court is more familiar with substantive Nebraska law than the Northern District of Illinois, courts often decide substantive legal questions based on other state's laws. *Amoco Oil,* 90 F.Supp.2d at 962. Where the law in question is neither complex nor unsettled, the interests of justice remain neutral between the competing courts. *Bodine's, Inc. v. Sunny-O, Inc.,* 494 F.Supp. 1279, 1286-87 (N.D.Ill.1980).

Here, the law in question is not so complex as to be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.), 45 UCC Rep.Serv.2d 702
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.))**

beyond the comprehension of the Illinois court. The applicable section of the Nebraska UCC is not different from the UCC. Both address the liability of parties under Article 3 Part 4 and the depository and collecting banks under Article 4 Part 2. NEB.REV.STAT. UCC §§ 3-420, 4-207. Neither party asserts any difference, and the Court finds none, between these sections of the two versions. Moreover, the UCC was meant to apply consistently throughout all participating jurisdictions. The UCC "attempts to give all parties ... methods to protect themselves in the event of legal complications."*In re Pearson Inds., Inc.,* 147 B.R. 914, 925 (Bankr.C.D.Ill.1992). The UCC's integrity rests on the preservation of this universal framework for commerce in assuring parties of the necessary means for such protection is available in all UCC jurisdictions.*Id.*

Common law negligence and conversion are also within the understanding of the Illinois court because, as the plaintiff indicates, the law is neither complex nor unsettled. Therefore, the Court's familiarity with the applicable law weighs neither for nor against a transfer.

2. The Speed at Which the Case Will Proceed to Trial

For the purposes of evaluating the speed at which a case will proceed to trial, the court turns to the Federal Court Management Statistics for "(1) the median months from filing to disposition and (2) the median months from filing to trial."*Amoco Oil,* 90 F.Supp.2d at 962. The median time from filing to disposition of all civil cases was five months in this district and ten months in the District of Nebraska. (Pl.'s Br. Opp. Def.'s Mot. Transfer at 12 .) The median time from filing to trial was twenty-eight months in this district and twenty-one months in the District of Nebraska. (Def.'s Rep. Br. Supp. Mot. Transfer at 6.) These statistics suggest that while the parties would receive a trial quicker in this district, they are more likely to receive a quicker resolution in the Northern District of Illinois. Accord-

ingly, this factor weighs neither for nor against a transfer.

3. The Relation of the Community to the Occurrence and the Desirability of Resolving Controversies in Their Locale

Although the time intervals and relevant law are relevant in assessing the interests of justice, those considerations alone are not dispositive. *United Air Lines,* 8 F.Supp.2d at 800. "Resolving litigated controversies in their locale is a desirable goal of the federal courts."*Doage v. Board of Regents,* 950 F.Supp. 258, 262 (N.D.Ill.1997). The instant dispute involves a minimal connection to Illinois. Both parties are incorporated and have their principal places of business in other states. The relevant law will be analyzed pursuant to Nebraska law. There are no witnesses providing crucial evidence located in Illinois. Finally, as discussed above, the material events relate to Nebraska concerns and did not take place in Illinois.

**\*6** Although the plaintiff correctly urges that the present litigation has a connection to all states because all citizens have an interest in ensuring that banks adhere to the standards of the UCC, Nebraska has a far more defined interest in the present litigation. The citizens of Nebraska have an interest in the actions of their local banks and Nebraska courts have an interest in overseeing their local banks. Therefore, the relation of the community to the issue of the litigation weighs in favor of the transfer.

In light of the neutrality of the other two public interest factors, the public interests as a whole weigh slightly in favor of the transfer. Therefore, the private and public interest factors weigh in favor of transferring the case to the United States District Court for the District of Nebraska.

*CONCLUSION*

For the foregoing reasons, the Court grants defend-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.), 45 UCC Rep.Serv.2d 702
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.))**

Page 6

ant's motion to transfer pursuant to 28 U.S.C. § 1404(a) [docket no. 5-1]. The Court thus orders the Clerk of the Court to transfer this case to the District of Nebraska. Defendant's motion for extension of time to answer or otherwise plead is denied as moot before this Court [docket no. 8-1]. This is a final and appealable order.

SO ORDERED

N.D.Ill.,2001.
Federated Dept. Stores, Inc. v. U.S. Bank Nat. Ass'n
Not Reported in F.Supp.2d, 2001 WL 503039 (N.D.Ill.), 45 UCC Rep.Serv.2d 702

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 977439 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 977439 (N.D.Ill.))

Page 1

**C**
Bloomstein v. Lucasfilms Ltd.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Richard BLOOMSTEIN, Plaintiff,
v.
LUCASFILMS LTD. and Lucas Digital Ltd. d/b/a Industrial Light & Magic, Defendants.
**No. 01 C 0770.**

May 10, 2002.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief J.
*1 Richard Bloomstein, an Illinois resident, has brought a patent infringement action against Lucasfilm Ltd. ("Lucasfilm") and Lucas Digital Ltd. d/b/a Industrial Light and Magic ("ILM"), whose principle place of business is in California. Bloomstein owns United States Patent No. 4,600,281 entitled "Altering Facial Displays in Cinematic Works," which is a process for synchronizing the lip and facial movements of a character in a visual track of cinematic work with the voice track of the film. Bloomstein alleges that ILM infringed on this process in the course of making special effects for the films *Dragonheart, Star Wars: Episode I-The Phantom Menace,* and *Star Wars: Episode II-Attack of the Clones.*ILM has motioned to dismiss for lack of personal jurisdiction or lack of proper venue, or alternatively to transfer venue to the Northern District of California. For the reasons set forth below, we grant ILM's motion to transfer venue and deny as moot ILM's motion to dismiss.

Under 28 U.S.C. § 1404(a), we may grant a motion for a transfer of venue if the transfer will best serve the convenience of the parties, the convenience of the witnesses, as well as the interests of justice. *See, e.g., Murphy v. Avon Products, Inc.,* 88 F.

Supp .2d 851, 852 (N.D.Ill.1999)(Aspen, C.J.). In deciding whether to transfer a case, we must balance all relevant public and private factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer to a different forum. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). Analysis of the relevant factors lead to a broad set of considerations, "the contours of which turn upon the particular facts of each case."*Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir.1986). Among those considerations are Bloomstein's choice of forum, the site of the material events and the relative ease of access to sources of proof. *Murphy,* 88 F.Supp.2d at 852-53. Other factors relating to the interests of justice include such concerns as ensuring speedy trials and having a judge who is familiar with the applicable law. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989).*See also, Murphy,* 88 F.Supp.2d at 853 (public interest factors include "the desirability of resolving a case in a particular forum").

ILM has met its burden of showing that the Northern District of California is clearly more convenient. *See Heller,* 883 F.2d at 1292. Although Bloomstein's residency in the Northern District of Illinois carries substantial weight, all other factors weigh in favor of transferring the case to the Northern District of California.

First, the alleged infringement occurred in California. Because infringement suits focus on the activities of the alleged infringer, its employees and its documents, the location of the infringer's place of business is a critical factor. *See, e.g., Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership,* 807 F.Supp. 470, 474 (N.D.Ill.1992). The location of ILM raises concerns about the inconvenience to potential witnesses if the case were to proceed in Illinois. The special effects work that allegedly infringed Bloomstein's patent occurred entirely within the state of California. Proceedings on the merits

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 977439 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 977439 (N.D.Ill.))**

Page 2

of this case may involve the testimony of countless technicians who were involved in the effects work in the films and the burden of transporting these witnesses to Illinois may disrupt the rapid production schedule of ILM's studio. Thus, the inconvenience to ILM outweighs the inconvenience to Bloomstein, who does not seem to have anything but his residency weighing in favor of his case remaining in Illinois.

**\*2** Second, the Northern District of California's familiarity with the issues in this case warrants transfer. The Northern District of California has already adjudicated a previous case involving ILM and the same patent. *See Bloomstein v. Paramount Pictures Corp. and Lucas Digital Ltd. d/b/a Industrial Light & Magic,* C 95-1864, 1996 WL 251918 (N.D.Cal.1996) (Patel, J.). Because patent infringement cases are highly technical and require careful, lengthy examination, the Northern District of California is capable of adjudicating this case much more expeditiously because it is already familiar with Bloomstein's '281 patent. Furthermore, the interests of judicial economy favor transfer, as the prior case may bind this case on some issues under the doctrine of collateral estoppel.

Finally, public interest supports resolving this case in California. California is the home of many more film and computer graphics studios than Illinois. These studios employ many artists and technicians who are likely to be affected by the outcome of this case. Since remedying patent infringement is a likely concern to many California residents and employees of film studios, it is in the public interest that this case be resolved in California.

For these reasons, we grant ILM's motion to transfer venue to the Northern District of California.

It is so ordered.

N.D.Ill.,2002.
Bloomstein v. Lucasfilms Ltd.
Not Reported in F.Supp.2d, 2002 WL 977439 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.